UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
DEL MONTE FRESH PRODUCE N.A., INC.,

             Plaintiff,

       - against -

M/V LOMBOK STRAIT her engines, boilers,
tackle, furniture, apparel, etc., *in rem*; SEATRADE
GROUP N.V., LOMBOK STRAIT
SCHIFFAHRTSGESELLSCHAFT MBH & CO.
KG, MPC MUNCHMEYER PETERSEN
STEAMSHIP GMBH & Co. KG, and
BETEILINGUNGSGES - REEFER
FLOTTENFONDS MBH & CO. KG, *in personam*,

             Defendants.
-------------------------------------------------------------X

**12 Civ. 3567 (ALC)**

**JOINT PRETRIAL ORDER**

     Plaintiff, DEL MONTE FRESH PRODUCE N.A., INC. ("Plaintiff"); and Defendants,

M/V LOMBOK STRAIT her engines, boilers, tackle, furniture, apparel, etc., *in rem*;

SEATRADE GROUP N.V., LOMBOK STRAIT SCHIFFAHRTSGESELLSCHAFT MBH &

CO. KG, MPC MUNCHMEYER PETERSEN STEAMSHIP GMBH & Co. KG, and

BETEILINGUNGSGES - REEFER FLOTTENFONDS MBH & CO. KG, *in personam*

("Defendants"), by their respective undersigned counsel and pursuant to the Court's Individual

Practices, submit the JOINT PRE TRIAL ORDER for this matter:

*i.*    ***Contact Information for Trial Counsel***

       **A.**   **Plaintiffs' Counsel**

          Gregory G. Barnett, Esq.
          Martin F. Casey, Esq.
          Veronica Mura, Esq.
          Casey & Barnett, LLC
          65 West 39th Street, 9th Floor
          New York, NY 10018
          212-286-0225(p) / 212-286-0261(f)

ggb@caseybarnett.com; mfc@caseybarnett.com; vm@caseybarnett.com

**B.**     **Defendants' Counsel**

Vincent M. DeOrchis, Esq.
Montgomery, McCracken, Walker & Rhoads, LLP
437 Madison Avenue, 29th Floor
New York, NY 10022
212-551-7730(p) / 212-201-1939(f)
vdeorchis@mmwr.com

*ii.*     ***Statement for Subject Matter Jurisdiction***

**A. Statement by Plaintiff as to the basis of Subject Matter Jurisdiction**

This claim involves an admiralty and maritime claim for cargo damage within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1333. The contracts of transportation that govern this claim, the bills of lading, provide for jurisdiction in the Southern District of New York. Defendants do not object to jurisdiction.

**B. Statement by Defendants as to the basis of Subject Matter Jurisdiction**

This Court has jurisdiction over the subject matter of this Admiralty case pursuant to 28 U.S.C. §1333(1).

*iii.*     ***Claims and Defenses:***

**A.**     **Plaintiff's Claims and Defenses**

The matter involves damage to a cargo of bananas in the form of premature ripe and turning during transport from Santo Tomas de Castilla, Guatemala to Gloucester City, New Jersey. There should be no dispute that this is a maritime claim, that liability will be determined pursuant to the Carriage of Goods by Sea Act ("COGSA") and that the cargo outturned from the

vessel in a damaged ripe and turning condition. There should also not be a dispute that the fruit that was damaged was loaded onboard the M/V LOMBOK STRAIT in holds 3ABC and 4ABC.

Each week Plaintiff, Del Monte, has vessel arrivals in Gloucester, New Jersey; Port Manatee, Florida; Galveston, Texas; and Hueneme, California carrying approximately 1.2 million of cartons of fresh fruit. Generally, there are two or more vessels that discharge in Gloucester with over 500,000 cartons of bananas weekly. Once discharged, the fruit gets quickly trucked out of the terminal to Del Monte's customers or their distribution centers. Annually, Del Monte ships approximately 60,000,000 cartons of bananas to North America and Gloucester City receives 40 to 50% of that total.  For months prior to and subsequent to this incident, Del Monte had not had claims for ripe and turning bananas sourced from Guatemala.

To be more specific, the week that the subject fruit was harvested in Guatemala in week 4 of 2012 for the M/V LOMBOK STRAIT, Del Monte also harvested fruit in Guatemala for the M/V CAP HORN and the M/V TOLEDO CARRIER that discharged in California as well as the M/V WILD JASMINE which discharged in Galveston, Texas. The fruit was sourced from the same farms, packed, transported and pre-cooled the same way in Guatemala. Only the fruit loaded into holds 3ABC and 4ABC of the M/V LOMBOK STRAIT discharged damaged.  . As the Court will see as it reviews the processes in Guatemala, including the mixing of fruit in the packing stations and warehouses, the statistical improbability of loading all of the "unfit fruit" into holds 3ABC and 4ABC of the M/V LOMBOK STRAIT is a virtually impossibility.

Del Monte, through their transportation arm, Network Shipping, chartered the M/V LOMBOK STRAIT to be part of a weekly service from Central America to Gloucester City, New Jersey. The vessel has been in the service for a few years and provides bi-weekly discharges of fresh fruit, generally on a Monday, into Gloucester City, New Jersey with cargos of

bananas, melons and pineapples. The schedule is virtually identical each week, loading fruit in Moin, Costa Rica and Santo Tomas, Guatemala and then proceeding to Gloucester City to discharge for the following Monday. Therefore, the Owners and the vessel's crew should be well versed with respect to the transportation needs of Del Monte and the Del Monte's carriage instructions for the fruit during transit.

Bananas are a climacteric fruit. Once triggered to the climacteric stage the fruit undergoes an irreversible ripening process where starch is turned into sugar. This stage is associated with increased ethylene production and an increase in the respiration rate and the yellowing of the peel. Therefore, bananas are shipped in a pre-climacteric state, with specific detailed carrying instructions provided to carriers in order to maintain that state. Bananas undergo forced controlled ripening when they are close to the consumer retail outlets. The defining point of the climacteric state in a banana is the sudden rise in respiration of the fruit and the release of $CO_2$ and ethylene.

To increase the shelf life, or greenlife, of bananas they need to be refrigerated. According to industry standard bananas should be in refrigeration preferably within 36 hours from harvest. Del Monte, known for its quality brand has internal guidelines that bananas should be in refrigeration within 24 hours. In the past few years Del Monte has instituted a program whereby pallets of bananas are scanned by means of a bar code. By doing this, the harvested fruit can now be tracked from the farm throughout the cold chain in Central America to the particular hold or container onboard the vessel to the ultimate discharge port. By reviewing these documents, Del Monte has been able to track every single box of fruit that was harvested for the M/V LOMBOK STRAIT from the farm until departure from Gloucester Marine Terminal in New Jersey. Based on this information, we have the ability to verify the harvesting

4

procedures and cool chain prior to loading.  It has been determined that all of the bananas that were damaged during the subject shipment were in refrigeration within the 24 hour internal Del Monte guideline.

The farms and harvests in Guatemala are closely monitored by onsite Del Monte personnel for quality.  Fruit is harvested 6 days a week from the same farms and through weekly feedback from quality control, both in Guatemala and North America, the farms agricultural, packaging and transportation processes are constantly observed and verified.  In addition, each week Del Monte runs a "green life" test on the fruit.  This simulates in a laboratory setting proper pre-cooling, loading, transport, discharge and storage of the fruit to determine how long it would take the fruit to ripen without ethylene exposure.  The green life test for the M/V LOMBOK STRAIT fruit showed that the fruit should last for 28 days.  In contrast, the damaged fruit only lasted 5 to 11 days.

As previously mentioned, during the specific week the fruit that was loaded on the M/V LOMBOK STRAIT was harvested, Del Monte also harvested fruit for three other vessels. With respect to the fruit loaded onboard the M/V WILD JASMINE, it can easily be verified that the fruit was harvested the same days from the same farms and discharged the bananas in Galveston, Texas (on the same date the M/V LOMBOK STRAIT discharged in Gloucester) in good condition. Also, it is important to note that the M/V LOMBOK STRAIT had Guatemalan fruit loaded in Hold 1 and in containers which was harvested the same days from the same farms and transported from those farms to the cool stores in Guatemala and outturned in good condition.

Over the course of many years, Del Monte has determined the optimum conditions for the transport of their fruit to market.  This consists of refrigeration and ventilation instructions

for the particular holds carrying their cargo. All agree that ventilation of the cargo holds is an important element to assuring proper carriage of bananas.

The refrigeration system onboard the vessel provides a cooling system to cool air in the "reefer batteries or cooler rooms". These are essentially rooms on one end of the cargo hold with cooling coils and circulating or cargo fans that blow the air through the cooling coils and then underneath the floor gratings. The floor gratings provide a ducting system for the cool air to flow underneath the cargo into the hold. The floor gratings have holes the length of the cargo hold for the cool air to rise up and go through the cargo. As the air rises through the cargo it picks up heat from the fruit and continues to rise until it is above the cargo and then is naturally directed back to the reefer battery. The air then goes through the cooling coils in the reefer battery and starts the cycle again. The air in the hold can either be re-circulated or be renewed with fresh air. There are fresh air intakes on the top of the Mast houses on the vessel's decks with fresh air fans that can be turned on to force fresh air via the fresh air ductwork and diffusers in the cooler rooms so that the cargo is ventilated with fresh air. The cooler room is readily assessable by the crew and generally is used by the crew to access the cargo to obtain pulp temperatures of the cargo during the voyage.

Refrigeration slows the respiration process of the fruit. As a normal byproduct of the fruit respiring, it takes in oxygen and gives off $CO_2$ and ethylene. Ethylene is also a catalyst for ripening and will start the premature ripening of fruit unless it is removed. There is a direct correlation between the amount of $CO_2$ and ethylene given off by fruit. Accordingly, it is standard industry practice to measure $CO_2$ in the cargo holds of a vessel to determine the level of ethylene and how much the cargo needs to be ventilated. Pursuant to the Del Monte carriage instructions, and widely known by shipowners and crew transporting fruit, if $CO_2$ rises in a

cargo hold the crew needs to ventilate the hold to bring in fresh air to flush out the ethylene. If this is not done, the fruit can be triggered onboard the vessel to start the ripening process.

The vessel loaded certain banana cargo at Moin, Costa Rica on January 23rd and then Santo Tomas de Castilla, Guatemala on January 26th, 2012 . The vessel was delayed in arriving into Guatemala by 14 hours due to a main engine breakdown. The vessel has four hatches divided into 15 cargo holds. The fruit that outturned in damaged condition came from Guatemala and was loaded in cargo holds 3A, 3B and 3C and 4A, 4B and 4C. Holds 1FC, 1A and 1B and containers loaded ondeck of the vessel also contained bananas from Guatemala but did not suffer damage. In total, there were 317,720 cartons of bananas loaded onboard the M/V LOMBOK STRAIT in Guatemala. There were 124,299 cartons of bananas in holds 3ABC and 4ABC, approximately 45,000 boxes had damage to varying degrees. Hold 1 with 37,164 cartons and the containers with 156,257 cartons did not have damage. (The M/V WILD JASMINE also had 169,551 cartons of bananas from Guatemala that outturned in good condition.)

The $CO_2$ monitor was worked on just prior to the voyage and was either not working properly or not calibrated properly. The testimony of the Chief Engineer confirmed that he did not calibrate the monitor after he worked on it, instead letting it calibrate itself. When looking at the data, the two prior voyages required the fresh air ventilation fans being turned on to ventilate the bananas because of the high $CO_2$ levels. These voyages had fruit that outturned in good condition. Fruit that is ripe and turning has a much higher respiration rate and consequently will produce significantly higher $CO_2$ than fruit that is still green. Yet, during the subject voyage the $CO_2$ readings remained low and never required ventilation. To repeat, the two voyages previous to the subject voyage with good cargo required fresh air ventilation due to high $CO_2$ readings. The subject voyage with ripe and turning cargo did not require fresh air ventilation as it had low

$CO_2$ levels.  Defendants cannot explain this discrepancy which clearly points to a monitor that is not reading the correct $CO_2$ levels in the cargo holds.

An inspection of the vessel revealed numerous reasons why the cargo outturned in damaged condition. In summary, the vessel's crew did not follow Del Monte's carriage instructions, the vessel was in a deteriorated state such that it was unseaworthy, and the $CO_2$ monitoring system was not working properly.  After the incident it is interesting to note that Del Monte did not change anything with the procedures or policies in Guatemala.  In contrast, the Owners of the M/V LOMBOK STRAIT quickly repaired the fresh air ducts and dampers on the vessel over the next few voyages, had the $CO_2$ monitor calibrated by a trained technician flown into Gloucester City from Holland, advised the crew by email to follow the Del Monte carriage instructions strictly,  put a hand held $CO_2$ measuring device on board the vessel so the crew would have the ability to measure $CO_2$ if they believed the $CO_2$ analyzer was not working properly and were in the process of changing the procedure for how the crew should calibrate the $CO_2$ monitor between the annual technician visits.

In summary, plaintiff believes it can show that they loaded bananas in good order and condition into the M/V LOMBOK STRAIT in Guatemala and the vessel discharged damaged fruit at discharge in Gloucester City, New Jersey.  The holds were never ventilated during the voyage therefore the ethylene concentrations in holds 3ABC and 4ABC were such that it prematurely ripened the warmer cargo.  This warmer cargo then emitted ethylene which ripened additional cargo in the particular holds.  If the $CO_2$ monitor was working and the holds were ventilated during this voyage this damage could have been avoided.

8

**B.**     **Defendants Claims and Defenses**

This Court has jurisdiction over the subject matter of this Admiralty case pursuant to 28 U.S.C. §1333(1).

This case arises under COGSA, 46 U.S.C. §1300-15(1936), which applies *ex proprio vigore*, and by incorporation into the ocean carrier's bills of lading.

Under COGSA, plaintiff has the burden of establishing that the cargo in question was delivered to the carrier in good order and condition, and received at the end of the ocean voyage in bad order and condition. *Products Corp. v. Andras Mentor,* 1969 A.M.C. 1482 (S.D.N.Y., 1967) (not officially reported); *The Francis Salman*, 1975 A.M.C. 1521 1544-1545 (S.D.N.Y., 1975); *J. Gerber v. S.S. Sabine Howaldt*, 437 F.2d 580 (2d Cir. 1971); *Demsey & Assoc. Inc. v. S.S. Sea Star*, 321 F. Supp. 663 (S.D.N.Y., 1970).  If plaintiff meets this burden, it has made out its *prima facie* case, and the burden shifts to the carrier to show the proximate cause as one of the "excepted causes" under COGSA. *Tupman Thurlow Co. v. S.S. Cap Castillo*, 490 F. d 302 (2d Cir. 1974); *Lekas Drivas, Inc. v. Goulandris*, 306 F.2df 426 (2d Cir. 1962); *Alcan Rubber v. Hellenic Leader*, 1978 A.M.C. 63 (S.D.N.Y., 1977).

Plaintiff's receipt of bills of lading are not enough to make out a *prima facie* case because the deterioration of the goods may have resulted from a basic, inherent, and hidden defect, such as mishandling, or exposure to high temperatures during overland carriage or storage befor loading on board of the vessel. Proof is required from the plaintiff that the bananas were delivered in actual good order and condition to the vessel. *Elia Salzman Tobacco Co. v. S.S.*

*Mormacwail*, 371 F.2d 537 (2d Cir. 1967); *Commodity Service Corp. v. Harburg-American Line*, 354 F.2d 235 (2d Cir. 1965); *Hecht, Lewis & Kahn, Inc. v. S.S. President Buchanan*, 236 F.2d 627 (2d Cir. 1956); *Camient Foods Inc. v. Brasileiro*, 647 F.2d 356 (S.D.N.Y.).  "Whenever the defense of inherent vice is raised, and it appears that the damage arose internally, it is self-evidentally calls into question the good condition of the goods upon shipment." *American Tobacco Company v. The Katingo Hadjipatera*, 81 F.Supp. 438, 436 (S.D.N.Y. 1948), modified on other grounds, 194 F.2d 449 (2d Cir. 1951).

The burden of disproving that the damage to the fruit was caused by an inherent vice of the goods is upon the plaintiff, since it made the arrangements to ship the cargo from Guatemala. *American Tobacco Co. supra; Hecht, Lewis & Kahn, Inc., supra; American Tobacco Company v. Goulandris,* 281 F.2d 179, 182 (2d Cir. 1960); *United States Steel International v. M/T Granheim-Fs* (Order No. 53283 dated June 16, 1982, 79 Civ. 6254 WCC).

Plaintiff bears the burden of establishing the extent of damage to the bananas caused by conditions prior to loading aboard the vessel.  If it is unable to establish the exact extent of the damage caused by the pre-shipment condition, the defendants are not liable even if additional damage was caused due to their negligence aboard the vessel. *The Neil Maersk*, 91 F. 2d 9323 (2d Cir. 1937).

If plaintiff establishes a *prima facie* case of cargo damage, the ocean carrier can avoid liability by offering evidence that the loss or damage occurred through the operation of an excepted cause under COGSA, 46 U.S.C. §1304(2)(a) through (p), or by proving that the loss

was caused without the fault of the carrier and/or its servants. 46 U.S.C. §1304(2)(q). *Margarine verkaufsunion Gmbh v. m/t G.C. Brovig*, 318 F. Supp. 977 (S.D.N.Y. 1970); *Lekas & Drivas, Inc. v. Goulandris*, 306 F.2d 426 (2d Cir. 1962).

With respect to stowage, the ocean carrier need only prove that it exercised due care to stow, ventilate, cool and care for the cargo properly.  46 U.S.C. §3(2) and (4)(1). *Encyclopedia Britannica, Inc. v. s/s Hong Kong Producer*, 422 F.2d 7, 16 n.7 (2d Cir. 1969); *Diethelm & Co., Ltd. v. s.s. Flying Trader*, 141 F. Supp. 271 (S.D.N.Y. 1956). The cargo was stowed on board of the M/V Lombok Strait by Del Monte in the customary manner, and cooled and ventilated in accordance with the recommendations by Del Monte.

Under the provisions of the Carriage of Goods by Sea Act, 48 U.S.C. §1304(2)(n), neither a carrier nor a ship will be held liable for any damage to transported goods where the damage results from insufficiency of packaging.  It has been consistently held that adequate packaging is the responsibility of the shipper, and that such packaging must be sufficient to withstand normal and reasonably foreseeable events during transit. *Insurance Co. of North American v. S.S. Flying Trader*, 306 F.Supp. 221 (S.D.N.Y. 1969); *Close v. Anderson*, 442 F. Supp. 14 (W.D. Wash. 1977); *Regal Fibers, Inc. v. Holland American Line*, 302. F. Supp. 958 (D. Oregon 1969).

A shipper will not be permitted to cast the burden upon a carrier of using extra special care in stowing cargo simply because it has failed to properly pack the goods for shipment.

*Bache v. Silver Lines*, 110 F.2d 60 (2d Cir. 1940); *S.M. Wolf Co. v. S.S. EXIRIA*, 200 F. Supp. 809 (S.D.N.Y. 1961).

A shipper owes to the Carrier an implied "warranty of the suitability for shipment of the packages containing the goods", and "that the goods are fit and safe for shipment, unless the shipper has notified the carrier to the contrary", *Luckenback s.s. Co. v. Coast Mfg. & Supply Co.*, 185 F. Supp. 910, 919 (E.D.N.Y. 1960).

Defendant is not liable for the damage as it was not caused by the actual fault or with the privity of the defendant or its agents. 46 U.S.C. 1304(2).  In essence, Clause Q requires that the defendant need only prove that it was free from negligence.  *Nissho-Iwai Co. v. m/t Stolt Lion*, 617 F.2d 907, 913, 1980 A.M.C. 867, 874 (2d Cir. 1980).

The temperatures to which the cargo was exposed while on the carrier's pier and in the course of ocean transit must be deemed the risk of the shipper since the plaintiff elected not to contract for specially cooled treatment either at the pier or in transit. *Commodity Service Corp. v. Boston Ins. Co.*, 1964 A.M.C. 926, 939 (S.D.N.Y. 1964), *aff'd. sub non*, *Commodity Service Corp. v. Hamburg-American Line*, 354 F.2d 234 (2d Cir. 1965).

The Plaintiff takes a gamble and assumes the risk of loss when he ships perishable cargo in non-refrigerated containers rather than in refrigerated containers. *Aunt Mid, Inc. v. Fjell-Orange Lines*, 458 F.2d 712 (7th Cir.1972).

In respect to the claim that the fresh air ventilation system, or any other part of the vessel was unseaworthy, the duty of seaworthiness under COGSA is that the carrier shall be bound before and at the beginning of the voyage to exercise due diligence to (a) make the ship seaworthy; (b) properly man, equip, and supply the ship; (c) make the holds, refrigerating and cooling chambers and all other parts of the ship in which goods are carried, fit and safe for their reception, carriage and preservation. 46 USC § 1303(1).   This section must be read in conjunction with 46 USC § 1304(1) of COGSA which provides "neither the carrier nor the ship shall be liable for loss or damage arising or resulting from unseaworthiness, unless caused by want of due diligence on the part of the carrier to make the ship seaworthy…".

The legal test for seaworthiness is "whether the vessel is reasonably fit to carry the cargo in which it has undertaken to transport," the test is applied on a case-by-case basis considering the particular and relevant facts at hand. *Peter Paul, Inc. v. M/S CHRISTER SALEN*, 152 F. Supp. 410 (S.D.N.Y. 1957) *aff'd* 258 F.2d 901 (2d Cir. 1958).

Unseaworthiness is relevant only if it is related to the loss of or damage to the cargo. *The Malcolm Baxter, Jr.,* 277 U.S. 323, 1928 A.M.C. 960 (1928).   There must be a cause or connection between the loss sustained and the unseaworthiness condition claimed.  If a ship is found to be unseaworthiness and due diligence is not exercised to prevent the unseaworthy condition, a shipowner would not be liable unless there is a cause or connection between the loss and the unseaworthy condition. *President of Union of India v. S.S. Janet Quinn*, 335 F.Supp. 1329 (S.D.N.Y 1971).

**C. Claims and defenses previously asserted that are not to be tried**

The parties state that the issue of quantum of damages and mitigation of damages is not to be tried.

iv.　　*The case is to be tried without a jury. Trial will last approximately 5 days.*

v.　　*The parties have not consented to the trial of this case before a Magistrate Judge.*

vi.　　*Stipulations:*

　　**a. Stipulations of Facts**

1. Prior to January 2012, the M/V LOMBOK STRAIT ("Vessel") had been under a long term time charter to Network Shipping Limited for more than 5 years.

2. At all material times, Seatrade Group N.V. Curacao was the Disponent Owner of the M/V LOMBOK STRAIT, and chartered the vessel to Network Shipping Limited.

3. At all material times, Network Shipping Limited was the transportation arm to Del Monte Fresh Produce N.A., Inc.

4. The Vessel is a refrigerated ocean-going cargo vessel.

5. The M/V LOMBOK STRAIT has 15 total decks, separated by 4 holds (1 through 4 forward to aft); hold 1 has three decks (lettered FC, A, and B top to bottom), and holds 2 through 4 each have 4 decks (lettered A through D top to bottom).

6. The decks are identified as follows: 1FC, 1A, 1B, 2A through 2D, 3A through 3D and 4A through 4D.

7. In January 2012, the Vessel carried a cargo of bananas, pineapples, and cantaloupes in consideration of an agreed charter hire and in accordance to the terms of bills of lading issued to Del Monte by Network Shipping Ltd. The M/V LOMBOK STRAIT was also a party to the bills of lading.

8. In January 2012, the Vessel carried a cargo of bananas, pineapples, and cantaloupes in consideration of an agreed upon freight and in accordance to the terms of bills of lading issued to Del Monte by Network Shipping Ltd. Seatrade Group N.V. ratified the bills of lading by virtue of their being signed "for the Master".

9. Del Monte provided "Carriage and Storage Recommendations – Version 12 November 2011" containing carriage recommendations for cooling and ventilation of

the vessel holds that are to be followed before loading and during loading and transportation.

10. Temperature inside the cargo holds is monitored through an automatic reefer plant data logger, and recorded through a separate but connected printer.

11. There are no hold temperature print outs from the printer for the period from January 22nd, 2012 to January 26th, 2012.

12. CO2 levels are measured through a CO2/O2 analyzer and printed out on the reefer data logger.

13. At all material times, the M/V LOMBOK STRAIT did not have a hand held CO2 measuring device onboard.

14. The O2 sensor on the M/V LOMBOK STRAIT was replaced by the Chief Engineer on January 22nd 2012.

15. The M/V LOMBOK STRAIT loaded a cargo of pineapples and a part cargo of bananas in Moin, Costa Rica on January 23, 2012.

16. The loading operations in Moin, Costa Rica started at 01:40 hours and were completed at 19:00 hours on January 23rd, 2012.

17. The pineapples were stowed in decks 2CD, as follows: 336 pallets in deck 2C, and 208 pallets in deck 2D.

18. The Costa Rican bananas were stowed at Moin in decks 3CD and 4D, as follows: 216 pallets (10,368 boxes) in deck 3C, 377 pallets (18,096 boxes) in deck 3D, and 192 pallets (9,216 boxes) in deck 4D.

19. The M/V LOMBOK STRAIT departed for Santo Tomas de Castilla, Guatemala at 21:00 hours on January 23rd, 2012.

20. During the sea voyage from Moin to Santo Tomas de Castilla the M/V LOMBOK STRAIT's main engine was stopped for approximately 14 hours for repairs to engine parts which had previously been installed at Moin.

21. The M/V LOMBOK STRAIT arrived in Santo Tomas de Castilla, Guatemala, on January 25th, 2012, at 23:15 hours, with a delay of approximately 11 hours on the estimated time of arrival, to load a cargo of cantaloupes and bananas.

22. The loading operations in Santo Tomas de Castilla, Guatemala started at 01:05 hours and were completed at 19:00 hours on January 26th, 2012.

23. The cantaloupes were stowed in decks 2AB, as follows: 464 pallets (25,984 boxes) in deck 2A, and 407 pallets (22,729 boxes) in deck 2B.

24. The Guatemalan bananas were stowed in decks 1FC, 1AB, 3ABC, and 4ABC, as follows: 413 pallets (19,959 boxes) in deck 1A, 241 pallets (11,511 boxes) in deck 1B, 120 pallets (5,694 boxes) in deck 1FC, 510 pallets (24,859 boxes) in deck 3A, 510 pallets (24,480 boxes) in deck 3B, 288 pallets (13,587 boxes) in deck 3C, 432 pallets (21,033 boxes) in deck 4A, 432 pallets (21,284 boxes) in deck 4B, and 372 pallets (19,056 boxes) in deck 4C.

25. The loading operations were carried out as follows: 3C from 01:00 to 04:50 hours, 3B from 05:15 to 11:55 hours, 3A from 12:15 to 19:00 hours, 4C from 01:05 to 06:10 hours, 4B from 06:40 to 12:10 hours, 4A from 12:25 to 17:55 hours.

26. 3080 pallets (156,257 boxes) of Guatemalan bananas were stowed in containers.

27. Bills of lading were issued by Network Shipping to Del Monte for the transportation of the Guatemalan bananas on January 26th, 2012.

28. The M/V LOMBOK STRAIT departed for Gloucester, New Jersey, at 20:00 hours on January 26th, 2012.

29. The M/V LOMBOK STRAIT arrived in Gloucester, New Jersey, on January 30th, 2012 at 03:45 hours, and discharged the entire cargo of bananas, pineapples, and cantaloupes on January 30th and 31st, 2012.

30. Discharge of under-deck cargo was carried out by means of the ship's gear elevator system and forklift trucks that moved pallets from the M/V LOMBOK STRAIT into an adjacent refrigerated pier shed; a container crane discharged the containers.

31. On January 31st, 2012 Del Monte Fresh Produce N.A., Inc. discovered ripe and turning bananas in the Holt warehouse after they had been discharged the day before from the Vessel and stowed in the refrigerated warehouse at the pier.

32. After inspection, surveyors and Del Monte Quality Control confirmed the only decks with ripe and turning fruit were 3ABC and 4ABC.

33. No ripe and turning fruit were found by Del Monte Fresh Produce N.A., Inc. Quality Control and/or surveyors in the fruit stowed in decks 1A, 1B, and 1FC.

34. No ripe and turning fruit were found by Del Monte Quality Control and/or surveyors in the containers that were carried on deck.

35. Del Monte Fresh Produce N.A., Inc. reported to their underwriters that 35,827 cartons of bananas were dumped, 8,186 cartons of bananas were donated, 24,535 cartons of

16

bananas were discounted, and 7,503 cartons of bananas were sold at depreciated values.

36. The Vessel's crew took pulp temperatures during the voyage.

37. During the voyage the crew did not smell nor see any ripe and turning bananas.

38. During the first day of discharge of the Vessel neither the crew nor Del Monte Quality Control smelled or saw any ripe and turning bananas.

39. The M/V LOMBOK STRAIT was a party to the clean bills of lading issued by Network Shipping for the cargo loaded from Costa Rica and Guatemala.

40. The M/V LOMBOK STRAIT's fresh air ventilation system on the inlet side was not in sound condition, it was found to have corrosion in each mast house and cargo hold.

41. The M/V LOMBOK STRAIT was at all material times owned by a German law limited partnership between Lombok Strait Schiffahrtsgesellschaft MBH &Co. KG. and Beteilingungsges Reefer Flottenfonds MBH & Co. KG; MPC Munchmeyer Petersen Steamship GmbH & Co. KG is the fund manager for the German law limited partnership business entity that owns the Vessel.

42. The cargo loaded in Moin, Costa Rica and Santo Tomas de Castilla, Guatemala was owned by Del Monte Fresh Produce N.A., Inc. at all material times.

43. A claim by Del Monte Fresh Produce N.A., Inc. was submitted to their underwriters, Mund & Fester GmbH & Co. KG.

44. Mund & Fester GmbH & Co. KG paid the insurance claim and became subrogated to the rights of Del Monte Fresh Produce N.A.

45. Del Monte's claim for damages to their cargo is $925,000.

46. Del Monte has not made a claim for Costa Rican bananas loaded in cargo hold 3C.

47. The subject cargo of bananas was packed in boxes by or for Del Monte which state on the outside of each box "STORE AT 14C".

48. Network Shipping has in the past refused to load cargos of bananas aboard vessels it believed were unfit to safely carry its cargo to destination.

49. The fruit loaded onboard the M/V LOMBOK STRAIT was harvested in Guatemala between January 19th and January 26th, 2012.

**b.  Stipulations of Law**

17

1. This case is a maritime claim and is governed by the Carriage of Goods by Sea Act, ("COGSA"), 46 USC §1300-1315.

vii.   *Witnesses*

   a.   **Plaintiff's Witnesses**

   1. **Mr. John Dott (de bene esse)**

      Mr. Jonh Dott was the marine surveyor appointed by Del Monte and will testify about his survey of the damaged fruit and investigation into the cause of the damage.

   2. **Mr. Ernest Casper (de bene esse)**

      Mr. Ernest Casper is the Port Manager for Del Monte Fresh Produce N.A., Inc. in Gloucester, NJ and will testify regarding port operations, the discharging of vessels including the M/V LOMBOK STRAIT, storage of fruit in the adjacent warehouse and placing the fruit into Del Monte's distribution chain..

   3. **Mr. Stephen Johnson (de bene esse)**

      Mr. Stephen Johnson is a Del Monte employee, and will testify as to the circumstances, mitigation efforts and costs associated with the M/V LOMBOK STRAIT claim.

   4. **Mr. Alejandro Olmos (de bene esse)**

      Mr. Alejandro Olmos is Del Monte Fresh Produce N.A., Inc. Quality Manager in Gloucester, NJ, and will testify about the first notice of the ripe and turning damage as well as his inspections of the cargo during the week.

   5. **Mr. Luis Fajardo (de bene esse)**

      Mr. Luis Fajardo is Del Monte Port Superintendant of Operations in Puerto Barrios, Guatemala and will testify about the procedures and documentation for growing, harvesting, pre-cooling, transporting and loading quality fruit in Guatemala.

   6. **Mr. Luis Enrique Rivas (de bene esse)**

      Mr. Luis Enrique Rivas is Del Monte Quality Control Superintendant in Guatemala who will testify about the Del Monte quality control procedures for growing, harvesting, pre-cooling, transporting and loading fruit in Guatemala.

   7. **Mr. Hector Soberon (de bene esse)**

Mr. Hector Soberon is the Bandegua Quality Control in Guatemala who will testify about the procedures for Del Monte quality control for growing, harvesting, pre-cooling, transporting and loading fruit in Guatemala

**8.  Mr. John Shields (de bene esse)**

Mr. Shields was the technical marine surveyor who was appointed by Del Monte to inspect the vessel with respect to determining the cause of the damage.  He will testify about the conditions on the vessel, the Chief Engineer's actions during the voyage and the condition of the vessel and its repair after the voyage.

**9.  Mr. Walter Tordoff (de bene esse)**

Mr. Walter Tordoff is the Director of Quality Assurance and Technical Services at Del Monte Fresh Produce N.A., Inc., he will testify on the quality of fruit from Guatemala, actions taken by del Monte to minimize the loss, Del Monte carriage instructions and Del Monte procedures.

**10. Mr. Glenn Suarez (de bene esse)**

Mr. Glenn Suarez is the Director of Marine Claims and Insurance at Del Monte Fresh Produce N.A., Inc., and will testify on claims from Guatemala, the submission of the claim to underwriters and payment of the claim.

**11. Mr. Christopher Elmer (de bene esse)**

Mr. Christopher Elmer is the Vice President of Bananas and Pineapples Sales and Coordination at Del Monte Fresh Produce N.A., Inc., he will testify on the quality of fruit and ripe and turning claims in North America, Del Monte carriage instructions and Del Monte procedures.

**Plaintiff intends to call the following expert witnesses at trial:**

**12. Mr. Roland Santos**

Mr. Roland Santos is a Marine Engineer and technical expert and will testify on the cause of loss, the condition of the vessel, the actions of the Chief Engineer and the vessel Owners prior, during and subsequent to the subject voyage.

**13. Mr. John Valpreda**

Mr. John Valpreda is a fruit expert with over 35 years experience in Quality Control of bananas.  He will testify on the good order and condition of the subject fruit at loading in Guatemala which includes Del Monte's procedures, growing conditions, harvesting, precooling and loading of the fruit in Guatemala.

b.  **Defendants' Witnesses**

**Defendants intend to call the following fact witnesses at trial:**

1.  **Dale Rolfe – Corporate Designee for all Defendants - Fact Witness.**

Mr. Rolfe's testimony will cover all aspects of the alleged damage to the cargo transported on board of the M/V Lombok Strait Voy 4 with particular attention to the dynamics of the operation of a reefer vessel in the banana trade, and the vessel's (including components) status of maintenance before during and after the Voyage.

2.  **Stijn Vodde – North American General Agency – Fact Witness.**

Mr. Vodde's testimony will cover his knowledge of the maintenance and repairs of the M/V Lombok Strait and his observations aboard the ship, as well as operational procedures.

3.  **Defendants may subpoena the testimony of the custodian of records from Holt Logistics.**

**Defendants intend to call the following expert witnesses at trial:**

1.  **Kevin Wilkie – Reefer Consult – Expert Witness.**

Mr. Wilkie is a reefer expert and will testify on the events surrounding the alleged damage to the cargo in lawsuit transported on board of the M/V Lombok Strait.  Mr. Wilkie's testimony will include commenting on the loading operation of the cargo, the "shock treatment and the carriage of the fruit on board of the M/V Lombok Strait including the condition of the fresh air trunknig on board of the vessel and its effect on the cargo loaded on board of the vessel, the $CO_2$ analyzer operation on board of the vessel and the production of $CO_2$ by the cargo.   Mr. Wilkie will further testify on the storage condition of the cargo before loading on board of the M/V Lombok Strait as well as the events the cargo was subjected to before during and after discharge from the M/V Lombok Strait, the traceability of the cargo. Mr. Wilkie will also testify with regrd to the grounding of the M/V Lombok Strait in 2011.

2.  **Jeroen de Haas – BMT Surveys – Expert Witness.**

Mr. de Haas is a nautical cargo and technical surveyor and consultant.  He attended on board of the vessel on behalf of Defendant after the alleged damage to the cargo.  Mr. de Haas will testify on his personal observation while attending on board of the vessel. Mr. de Haas will also testify on the events surrounding the voyage 4 of the M/V Lombok Strait as well as general information regarding the vessel, the vessel certification and employment, the voyage preceding Voy 4 and the preparation of the cargo holds for Voy 4.  Mr. de Hass will further testify on the Voy. 4 of the M/V Lombok Strait to Gloucester NJ.  He will further testify on his observation during the inspection of the M/V Lombok Strait and on the finding of his survey on board of the vessel. Mr. de Hass will further testify and offer his comments to Alpha Marine Survey Reports in particular with regard to the $CO_2$ gas analyzer, the operation of the fresh air dampers, the

condition of the fresh air supply dampers and duct work, the temperature management during the voyage, and the grounding that involved the Lombok Strait in 2011.

### 3. Anna Snowdon, Phd - Wolfson College

Ms. Snowdon is an expert in forensic post-harvest pathology of fruits and vegetables Ms. Snowdon will testify on general principles of banana carriage and the likely cause or causes of damage to the fruit in question, based on available evidence of aspects of pre-shipment history (such as production, harvesting, pack-house treatments, pre-cooling, inland transport, shipper's carriage instructions etc.) and shipboard factors (such as stowage, temperature regime, fresh air ventilation, and duration of the voyage).

### *viii.   Deposition Testimony Designations*

***Plaintiffs reserve their rights and preserve any objection raised on the record during the deposition of both fact and expert witnesses.***

***Defendants reserve their rights and preserve any objection raised on the record during the deposition of both fact and expert witnesses.***

### a. Plaintiff

| WITNESS | PAGE/LINE/EXHIBIT |
|---|---|
| **Ernest Casper** Port Manager for Del Monte Fresh Produce North America in Gloucester | |
| | 4:1;5 |
| | 5:2-8 |
| | 6:13-22 |
| | 7:6-9 |
| | 8:6-25 |
| | 9:1-25 |
| | 10:1; 22-25 |
| | 11:5-15 |
| | 12:12-25 |
| | 13:1-7; 17-24 |
| | 14:4-22 |
| | 15:4-25 |
| | 16:1-25 |
| | 17:1-25 |
| | 18:1; 13-25 |
| | 19:1; 11-17 |

| | |
|---|---|
| | 20:3-25 |
| | 21:1-25 |
| | 22:1-25 |
| | 23:1-4; 6-24 |
| | 25:1-11; 21-25 |
| | 26:1-12; 20-23 |
| | 28:18-25 |
| | 29:1 |
| | 30:13-25 |
| | 31:1-22 |
| | 32:1-25 |
| | 33:1-16 |
| | 34:23-25 |
| | 35:1-25 |
| | 36:1-7; 13-25 |
| | 37:1-12 |
| | 39:3-25 |
| | 40: 1-16 |
| | 41:14-25 |
| | 42:1-6 |
| | 43: 18-24 |
| | 44:1-12 |
| | 45:9-25 |
| | 46:1-4 |
| | 47:8-22 |
| | 48:1-3; 18-23; Exh 46 |
| | 49:2-9 |
| | 50:5-8; 12-16; 20-25 |
| | 51:1-9; 13-25; Exh 48 |
| | 52:1-3;7-10;Exh 49;16-25 |
| | 53:1-13 |
| | 54:20-25 |
| | 55:4-25 |
| | 56:1-16; 23-25 |
| | 57:1-25 |
| | 58:1-25 |
| | 59:1-10 |
| | 68:21-25 |
| | 69:1 |
| | 83:7-11 |
| | 86:11-24; Exh 54 |
| | 95:7-25, Exh 52 |

| | |
|---|---|
| | 96:1-25 |
| | |
| **Luis Enrique Rivas**<br>Del Monte Quality<br>Control Superintendant,<br>Puerto Barrios –<br>Guatemala | |
| | 4:12 |
| | 5:8-24 |
| | 6:12-25 |
| | 7:8-25 |
| | 8:1-25 |
| | 9:1-25 |
| | 10:1-25, Exh 62 |
| | 11:1-25; |
| | 12:1-11; 19-25 |
| | 13:1-25 |
| | 14:1-24; Exh 83 |
| | 15:6-13; 23-25; Exh 84 |
| | 16:1-4; 10-25; Exh 98 |
| | 19:22-25 |
| | 20:1-25 |
| | 21:1-9; 14-25 |
| | 22:1-14 |
| | 23:20-25; Exh 123 |
| | 25:9-25 |
| | 26:1 |
| | 27:10-24 |
| | 28:1-18 |
| | 29:1-14 |
| | 34:12-25 |
| | 35:1-25 |
| | 36:1-5; 23-25 |
| | 37:1-3; 25 |
| | 38:1-7; 22-25 |
| | 39:1-21 |
| | 40:9-25; Exh 95 |
| | 41:7-22 |
| | 42:8-25 |
| | 43:1-2 |
| | 44:5-14;25 |
| | 45:1; Exh. 94 |
| | 46:6-8; 14-24; Exh 75 |

| | |
|---|---|
| | 47:2-14; 16-17;19-25; Exh 62 |
| | 48:1-10; 19-25; Exh 75 |
| | 49:1-2; 5-6 |
| | |
| **Hector Soberon** Bandegua Quality Control Assistant, Puerto Barrios – Guatemala | |
| | 4:12 |
| | 5:6-25 |
| | 6:1-4; 9-25 |
| | 7:1-25 |
| | 8:1-4; 10-25 |
| | 9:1-13; 22-25; Exh. 75 |
| | 10:2-25 |
| | 11:1-25 |
| | 12:1-10; 23-25 |
| | 13:1-25; Exh 89 |
| | 14:1-25 |
| | 15:1-25; Exh. 74 |
| | 16:1-11 |
| | 17:1-25; Exh. 98 |
| | 18:1-25; Exh. 98, 99, 100 |
| | 19:1-25 |
| | 20:1-25 |
| | 22:16-24 |
| | 24:19-25; Exh. 123 |
| | 26:11-25; Exh 89 |
| | 27:1-22 |
| | 28:1-13 |
| | 29:17-25 |
| | 30:1-16; Exh 95 |
| | 33:9-25 |
| | 34:1-7 |
| | 35:15-25 |
| | 36:1-8; 15-25 |
| | 37:1-7;25 |
| | 38:1-8; 13-20; Exh 74, 75 |
| | |
| **Luis Fajardo** Del Monte Guatemala Port Superintendant of Operations, Puerto | |

| Barrios – Guatemala | |
| --- | --- |
| | 7: 10-15 |
| | 9:3-20 |
| | 10:13- 25 |
| | 11:1-25 |
| | 12:1-10 |
| | 13:7-12; 23-25 |
| | 16:11-25 |
| | 17:1-2; 8- 25; Exh. 53 |
| | 18:1-25 |
| | 19:1-25 |
| | 20:1-12; 17-25 |
| | 21:1-8 |
| | 22:7-25 |
| | 23:1-25 |
| | 24:1-25 |
| | 25:1-25 |
| | 26:1-25 |
| | 27:1-25 |
| | 28:1-16 |
| | 29:20-25; |
| | 30:1-25 |
| | 31: 1-25 |
| | 32:1-25; Exh. 69 |
| | 33:1-7; 25 |
| | 34:1-25 |
| | 35:1-17;25 |
| | 36:1- 25 |
| | 37:1-25 |
| | 38:1- 25 |
| | 39:1-10; 17-25 |
| | 40:1- 25 |
| | 41:1-25 |
| | 42:1-2; 8-25 |
| | 43:1-25 |
| | 44:1-25 |
| | 45:1-25 |
| | 46:1-25 |
| | 47:1-19 |
| | 52:6- 25 |
| | 53:1-3 |
| | 54:11-25 |

| | |
|---|---|
| | 55:1-25 |
| | 56:1-25 |
| | 57:1-15 |
| | 58:14-25 |
| | 59:1-25 |
| | 60:1-25 |
| | 61:1-25 |
| | 62:1-13 |
| | 63:6-25 |
| | 64:1-25 |
| | 65:1-25 |
| | 66:1-15 |
| | 67:1-25 |
| | 68:1-25 |
| | 69:1-25 |
| | 70:1-25 |
| | 71:1-25 |
| | 72:1-25 |
| | 73:1-25 |
| | 74:1-25 |
| | 75:1-25 |
| | 76:1-25 |
| | 77:1-25 |
| | 78:1-25 |
| | 79:1-25 |
| | 80:1-25 |
| | 81:1-25 |
| | 82:1-3; 8-25 |
| | 83:1-25 |
| | 84:1-25 |
| | 85:1-25 |
| | 86:1-25 |
| | 87:1-17; 24-25 |
| | 88:1-2; 6-25 |
| | 89:1-25 |
| | 90:1-25 |
| | 91:1-17 |
| | 92:10-25 |
| | 93:1-25 |
| | 94:1-25 |
| | 95:1-24 |
| | 97:10-25 |

| | |
|---|---|
| | 98:1- 25 |
| | 99:1-18; 23-25 |
| | 100:1-25 |
| | 101:15-24 |
| | 102:1-11; 15-25 |
| | 103:1-25 |
| | 104:1-16 |
| | 106:17-25 |
| | 107:1-25; Exh. 74 |
| | 108:1-25 |
| | 109:1-25; Exh. 75 |
| | 110:1-25 |
| | 111:1-25 |
| | 112:1-25 |
| | 113:1-25 |
| | 114:1-25 |
| | 115:1-25; Exh. 76 |
| | 116:1-25 |
| | 117:1-25; Exh. 77 |
| | 118:1-25; Exh. 78 |
| | 119:1-25; Exh. 79 |
| | 120:1-25 |
| | 121:1-25 |
| | 122:1-25 |
| | 123:1-25 |
| | 124:1-25 |
| | 125:1-25 |
| | 126:1-25 |
| | 127:1-25; Exh. 80 |
| | 128:1-25 |
| | 129:1-25 |
| | 130:1-25 |
| | 131:1-25 |
| | 132:1-25 |
| | 133:1-25; Exh. 81 |
| | 134:1-25 |
| | 135:1-25; Exh. 82 |
| | 136:1-25; Exh. 83 |
| | 137:1-25; Exh. 84 |
| | 138:1-25 |
| | 139:1-25; Exh. 85 |
| | 140:1-25 |
| | 141:1-25; Exh. 86 |
| | 142:1-25; Exh. 87 |
| | 143:1-25; Exh. 88 |
| | 144:1-25 |

| | |
|---|---|
| | 145:1-25; Exh. 89 |
| | 146:1-25 |
| | 147:1-25 |
| | 148:1-25; Exh. 90 |
| | 149:1-25 |
| | 150:1-25; Exh. 91 |
| | 151:1-25 |
| | 152:1-25 |
| | 153:1-25; Exh. 92 |
| | 154:1-25; Exh. 94 |
| | 155:1-25; Exh. 95 |
| | 156:1-25; Exh. 96 |
| | 157:1-25; Exh. 97 |
| | 158:1-25 |
| | 159:1-25; Exh. 98 |
| | 160:1-25 |
| | 161:1-25 |
| | 162:1-25; Exh. 99; Exh. 100 |
| | 163:1-25; Exh. 101 |
| | 164:1-25; Exh. 102 |
| | 165:1-25 |
| | 166:1-25; Exh. 103; Exh. 104 |
| | 167:1-25; Exh. 105 |
| | 168:1-25; Exh. 106 |
| | 169:1-25; Exh. 107 |
| | 170:1-25; Exh. 108; Exh. 109 |
| | 171:1-25; Exh. 110 |
| | 172:1-25; Exh. 111 |
| | 173:1-25 |
| | 174:1-25; Exh. 112 |
| | 175:1-25; Exh. 113; Exh. 114 |
| | 176:1-25; Exh. 115 |
| | 177:1-25; Exh. 116 |
| | 178:1-25; Exh. 117 |
| | 179:1-25; Exh. 118 |
| | 180:1-25 |
| | 181:1-25 |
| | 182:1-25 |
| | 183:1-5 |
| | 184:2-25 |
| | 185:1-25 |
| | 186:5-16 |
| | 187:4-10 |
| | 188:1-7;15-25 |
| | 189:1-25; Exh. 119 |
| | 190:1-12 |

| | |
|---|---|
| | 194:10-18 |
| | 195:16-22 |
| | 197:15-25 |
| | 198:1-2 |
| | 199:5-19 |
| | 205:18-25 |
| | 206:1-25 |
| | 207:1-25 |
| | 208:1-5 |
| | 209:16-18 |
| | 210:8-25 |
| | 211:1-25 |
| | 212:2-13 |
| | 217:22-25 |
| | 218:1-3; 8-25 |
| | 219:1-5 |
| | 220:9- 17 |
| | 224:16-19; Exh. 120 |
| | 225:3-18; Exh. 121 |
| | 227:1-6; Exh. 90 |
| | 228:10-25;  Exh. 98 |
| | 229:1-2 |
| | 230:11-23 |
| | 232: 9-25 |
| | 233:1-14 |
| | 234:13-18 |
| | 238:10-25; Exh. 122 |
| | 240:13-25 |
| | 241:1 |
| | |
| **Walter Tordoff** Del Monte Senior Director of Quality Assurance and Technical Services | |
| | 4:1-2;9-15 |
| | 5:1;25 |
| | 6:1-19 |
| | 7:1;18-25 |
| | 8:1-6; 18-25 |
| | 9:1-25 |
| | 10:1-5; 10-25 |
| | 11:1-12; 16-25 |

| | |
|---|---|
| | 12:1-21 |
| | 13:1;3-25 |
| | 14:1-25 |
| | 15:1;3; 7-25; Exh 61 |
| | 16:1-25 |
| | 17:1-21 |
| | 18:1;11-22 |
| | 20:1;21-25 |
| | 21:1-13 |
| | 22:1-25 |
| | 23:1-11 |
| | 26:1;21-25; Exh 62 |
| | 27:1-2 |
| | 29:1-12 |
| | 32:1-8; 14-25 |
| | 33:1-25 |
| | 34:1-10; 16-25 |
| | 35:1-2; Exh 66 |
| | 39:1;12-15 |
| | 41:1;8-19; 24-25 |
| | 42:1-16 |
| | 43:1-8;20-25 |
| | 44:1-9 |
| | 46:1;4-7;9-25 |
| | 47:1-4; 20-25 |
| | 48:1-25; Exh 10 |
| | 49:1-4; 12-23 |
| | 50:1;8-25 |
| | 51:1-7 |
| | 52:1;12-24 |
| | 53:1;4-23 |
| | 54:1-14;19-25 |
| | 55:1-5 |
| | 72:1;10-23 |
| | 73:1;17-25 |
| | 75:1;9-25 |
| | 76:1-19 |
| | 77:1;6-17; Exh 121 |
| | 78:1;14-20 |
| | 79:1-22 |
| | 80:1;9-16;23-25 |
| | 81:1-6 |

| | |
|---|---|
| | 82:1;11-25 |
| | 83:1-5 |
| | 84:1-10 |
| | 96:1;10-25 |
| | 97:1-10 |
| | |
| **Stephen P. Johnson**<br>Del Monte Operations,<br>Gloucester | |
| | 4:1;5-11; 16-25 |
| | 5:2-16; 21-25 |
| | 6:1-18; 23; Exh 55 |
| | 7:1-25 |
| | 8:1-25 |
| | 9:1-13; 16-24 |
| | 10:3-25 |
| | 11:1-5; 12-25 |
| | 12:1-25 |
| | 13:1-2; 6-25 |
| | 14:1-25 |
| | 15:1-8; 14-15; Exh 56 |
| | 16:1-14 |
| | 18:10-25; Exh 55 |
| | 19:1-5 |
| | 21:5-25 |
| | 22:16-23; Exh 55 |
| | 23:2-14; 21-25; Exh 57 |
| | 24:1-2; 7-8; 12-25; Exh 59 |
| | 25:1-11; 15-25 |
| | 26:1-13; Exh 57 |
| | 28:10-20; 25 |
| | 29:1-7; 11-13; 20-25 |
| | 30:1; 16-24 |
| | 33:3-17 |
| | 35:15-25 |
| | 36:1-8 |
| | 38:10-14; 18-25 |
| | 39:1-8; 11-14; 23-25 |
| | 40:1-3; 12-13; |
| | 42:1-3;8-15 |
| | 43:1-3; 9-15 |
| | 44:7-15; 20-25; Exh 60 |

| | |
|---|---|
| | 45:1-13 |
| | 46:16-25 |
| | 47:7-25 |
| | 48:1-9; 13-16; 22-25 |
| | 49:1-2 |
| | |
| **Chris Elmer**<br>Del Monte VP of bananas and pineapples sales and coordination | |
| | 5:9-12 |
| | 7:3-11; 21-23 |
| | 8:2-25 |
| | 9:1-25 |
| | 10:9-25 |
| | 11:1-13 |
| | 12:5-25 |
| | 13:1-8; 11-14; 22-25 |
| | 14:1-11 |
| | 15:3-22 |
| | 16:5-10; 18-24 |
| | 21:4-13; 21-25 |
| | 28:5-24 |
| | 29:9-25 |
| | 30:1-5; 13-16 |
| | 31:15-20 |
| | 35:13-23; Exh. 61 |
| | 42:4-18 |
| | 43:22-25 |
| | 44:1-3;18-25 |
| | 45:1-7; 10-25 |
| | 46:1-25 |
| | 47:1-5;23-25 |
| | 48:1-21 |
| | 49:1-12 |
| | 55:19-25 |
| | 56:1-5;18-25 |
| | 57:1-5 |
| | 58:14-25 |
| | 59:1-5 |
| | 60:2-16 |
| | 61:11-15; 21-25 |
| | 62:1-4 |

| | |
|---|---|
| | 63:20-25 |
| | 64:1-20 |
| | |
| **Glenn Suarez**<br>Del Monte Director of<br>Marine Claims and<br>Insurance | |
| | 5:6;9-12; 24-25 |
| | 6:1-8 |
| | 7:1-25 |
| | 8:1-10 |
| | 9:12-22 |
| | 10:3-25 |
| | 11:1-25 |
| | 12:1-25; Exh 130, 131 |
| | 13:1-2; 15-25 |
| | 14:1-6; 21-24 |
| | 15:2-24 |
| | 16:6-21; Exh 55 |
| | 17:10-23; Exh 130 |
| | 18:2-15 |
| | 19:2-25 |
| | 20:1-16 |
| | 21:6-19 |
| | 22:1-10 |
| | 23:2-21 |
| | 24:1-4; 12-24; Exh 132, 133 |
| | 25:5-25 |
| | 26:1 |
| | 41:2-11 |
| | 44:21-25 |
| | 45:1-16 |
| | 47:2-5; Exh 134 |
| | 55:23-25 |
| | 56:1-14 |
| | 63:5-14; 21-25 |
| | 64:1-20 |
| | 66:10-19; 22-25 |
| | 67:1-9 |
| | 69:21-25 |
| | 70:1-24 |
| | 71:4-7 |
| | 72:5-12; Exh 133 |

| | |
|---|---|
| | 74:4-11; 15-17 |
| | 75:14-16 |
| | 77:2-20 |
| | 78:6-25 |
| | 80:7-21; Exh 62 |
| | 81:7-8; 14-25 |
| | 82:1-3 |
| | 83:4-8; 19-25 |
| | 84:1-12 |
| | |
| **Jerome Pereira**<br>Surveyor | |
| | 4:15-22 |
| | 5:9-11; 17-25 |
| | 6:2-25 |
| | 7:2-23 |
| | 8:16-25 |
| | 9:2-12, 20-23 |
| | 13:22-25 |
| | 14:2-9 |
| | 15:14-25 |
| | 16:2-12 |
| | 17:6-22 |
| | 18:3-20 |
| | 21:3-10; Exh. 2 |
| | 29:15-25 |
| | 30:2-6 |
| | 31:9-25 |
| | 32:2-25 |
| | 33:2-25 |
| | 34:2-25 |
| | 35:2-25 |
| | 36:1-22 |
| | 39:23-25 |
| | 40:2-15 |
| | 41:4-11 |
| | 42:17-25 |
| | 43:2-18 |
| | 47:5-25 |
| | 48:2-18 |
| | 51:18-25 |
| | 53:18-25 |

| | |
|---|---|
| | 54:2-11 |
| | 59:10-25 |
| | 60:2-8 |
| | 63:15-25 |
| | 64:2-12 |
| | 66:18-25 |
| | 67:2-15 |
| | 74:1-25 |
| | 75:1-25 |
| | 77:2-3;13-25 |
| | 78:2-11 |
| | 80:12-21 |
| | 81:6-16 |
| | 83:9-25 |
| | 84:2-17 |
| | 85:3-11 |
| | 86:22-25 |
| | 87:2-20 |
| | 89:2-11; Exh 8 |
| | |
| **Alejandro Olmos** Del Monte Quality Manager, Gloucester | |
| | 1:1-25 |
| | 4:4-6;11-25 |
| | 5:1-9; 13-25 |
| | 6:1-25 |
| | 7:1-21 |
| | 8:13-25 |
| | 9:1-21; Exh 61; Exh 62 |
| | 10:18-25 |
| | 11:1-25 |
| | 12:1-25 |
| | 13:1-25 |
| | 14:1-25; Exh 52 |
| | 15:1-25 |
| | 16:1-19 |
| | 17:7-25; Exh 61 |
| | 18:1-25; Exh 62 |
| | 19:1-12; 21-25 |
| | 20:1-8;23-25 |
| | 21:1-25 |

| | |
|---|---|
| | 22:1-9;13-21 |
| | 23:14-22 |
| | 24:10-15 |
| | 25:1-25 |
| | 26:1-21 |
| | 27:17-25 |
| | 28:1-2; 8; 16:25 |
| | 29:1-10 |
| | 30:10-23 |
| | 31:7-25 |
| | 32:1-2 |
| | 34:4-25 |
| | 35:1-6; 14-19 |
| | 36:1-25; Exh 50 |
| | 37:1-6; 10-25 |
| | 38:1-25 |
| | 39:1-12 |
| | 40:14-18; 24-25 |
| | 41:1-11 |
| | 42:23-25 |
| | 43:1-25; Exh 52 |
| | 44:1-3; 14-25 |
| | 45:1-25 |
| | 46:1-9; 13-25 |
| | 47:1-19 |
| | 48:1-14 |
| | 51:8-25 |
| | 52:1-25 |
| | 53:1-6; 13-25 |
| | 54:1-19 |
| | 55: 20-25 |
| | 56:1-13 |
| | 60:13-25, Exh 64; Exh 65 |
| | 61:1-8 |
| | 64:22-25 |
| | 65:1-25 |
| | 66:1-4; 21-25 |
| | 67:1 |
| | 72:21-25 |
| | 73:1-11 |
| | 77:4:25 |
| | 78:1-17 |

| | |
|---|---|
| | 79:9-18 |
| | 81:1-22 |
| | |
| **Stijn Vodde**<br>Superintendent | |
| | 4:1-3;10-18;24 |
| | 5:1-13 |
| | 7:21-24 |
| | 8:1-19 |
| | 9:4-20 |
| | 10:4-5; 21-24 |
| | 11:1-25 |
| | 16:6-17 |
| | 17:4-8; 13-17 |
| | 18:2-18 |
| | 19:3-24 |
| | 20:1-12; 19-24 |
| | 21:1-10 |
| | 22:4-10; 17-19 |
| | 23:14-24 |
| | 24:1-25 |
| | 25:1-12; 18-23 |
| | 26:17-24; Exh 126 |
| | 27:1-5; 12-24 |
| | 28:7-18 |
| | 29:5-9; 16-24 |
| | 31:7-24 |
| | 32:1-2 |
| | 33:2-24 |
| | 34:1-24; Exh 127 |
| | 35:1-14; 19-22 |
| | 36:1-11 |
| | 37:1-12 |
| | 43:4-24 |
| | 44:1-7; 15-24 |
| | 48:1-11 |
| | 49:16-24 |
| | 50:1-12 |
| | 51:10-22 |
| | 55:16-19 |
| | 56:9-22 |
| | 57:7-16 |

| | |
|---|---|
| | 59:10-24 |
| | 60:1-4; 10-16 |
| | 61:10-16; 22-24 |
| | 62:1-4 |
| | 63:6-12; Exh 128 |
| | 64:7-25 |
| | 65:1-25 |
| | 66:1-3 |
| | 73:5-25 |
| | 75:1-4; 14-15; 20-24 |
| | 76:1-2; 21-24 |
| | 77:1-17 |
| | 78:1-15 |
| | |
| **Dale Rolfe**<br>Representative for<br>Beteilingungsges,<br>Lombok Strait, MPC | |
| | 1:2-25 |
| | 6:2-20 |
| | 7:5-7; 16-25 |
| | 8:2-5 |
| | 9:2-5;22-25 |
| | 10:2-13; 17-25 |
| | 11:2-25 |
| | 12:2-25 |
| | 13:2-21 |
| | 14:4-13; 24-25 |
| | 15:2-25 |
| | 16:2-25 |
| | 17:2-23 |
| | 18:16-20 |
| | 19:14-25 |
| | 20:2-10 |
| | 21:9-24 |
| | 22:4-15 |
| | 23:4-6;18-25 |
| | 24:6-25 |
| | 25:2-6; 19-25 |
| | 26:2; 11-18 |
| | 27:7-25 |
| | 29:2-16 |

| | |
|---|---|
| | 30:1;5-9 |
| | 35:6-25 |
| | 36:2-25 |
| | 37:2-3;24-25 |
| | 39:2-11; 21-24 |
| | 40:10-16 |
| | 42:7-25 |
| | 43:2-25 |
| | 44:2-25 |
| | 45:2-5; 14-25 |
| | 46:2-3; 23-25 |
| | 47:2-25 |
| | 48:2-5;10-25 |
| | 49:2-25 |
| | 50:2-24 |
| | 51: 13-18; 23-25 |
| | 52:2-3; 14-25 |
| | 53:2-5 |
| | 54:8-25 |
| | 55:2-4; 12-25 |
| | 56:2-25 |
| | 57:16-22 |
| | 58:13-25 |
| | 59:2-14 |
| | 61:19-24 |
| | 62:17-25 |
| | 63:2-10; 17-25 |
| | 64:2-5; 22-25 |
| | 65:2-18 |
| | 66:2-25 |
| | 67:2-25 |
| | 68:2-25 |
| | 69:2-19 |
| | 70:22-25 |
| | 71:2-25 |
| | 72:2-10; 19-23 |
| | 73:12-25 |
| | 74:2-25 |
| | 75:2-11 |
| | 76:11-25; Exh 10 |
| | 77: 2 |
| | 78:18-25 |

| | |
|---|---|
| | 79:2-25 |
| | 80:2-13; 22-25 |
| | 81:8-25 |
| | 82:2-22 |
| | 84:17-25 |
| | 85:2-25 |
| | 86:16-25 |
| | 87:2-7 |
| | 88:23-25 |
| | 89:2-25, Exh. 11 |
| | 90:2-25 |
| | 91:2-25 |
| | 92:2-14; 20-25 |
| | 93:8-23 |
| | 94:20-25 |
| | 95:2-25 |
| | 96:2-25 |
| | 97:2-3; 13-21 |
| | 98:11-22 |
| | 100:14-18 |
| | 101:2-25 |
| | 102:2-7; 19-25 |
| | 103:2; 9-18 |
| | 105:4-7 |
| | 106:2-10; 24-25 |
| | 107:19-25 |
| | 108:2-13; 21-25 |
| | 109:2-11; 18-25 |
| | 110:2-7; 11-25 |
| | 111:2-4 |
| | 112:24-25 |
| | 113:2-4; 13-15; 21-25 |
| | 114:2-7; 15-17; 23-25 |
| | 115:2-5 |
| | 117:7-15; 20-22 |
| | 120:2-10; Exh 15 |
| | 122:17-25; Exh 12 |
| | 123:2-9 |
| | 125:12-25 |
| | 126:2-25 |
| | 127:2-24 |
| | 128:10-25 |

| | |
|---|---|
| | 129:2-6 |
| | 130:15-19 |
| | 131:15-20 |
| | 132:5-10 |
| | 133:2-25 |
| | 134:2-25 |
| | 135:2-16 |
| | 135:2-16 |
| | 136:9-12 |
| | 137:13-25 |
| | 138:2-6; 20-24 |
| | 141:19-25 |
| | 142:2-25 |
| | 143:2-25 |
| | 144:2-25 |
| | 145:2-14; 17-24; Exh 17 |
| | 146:12-25 |
| | 147:2-7; Exh 18 |
| | 148:20-25 |
| | 149:2-25 |
| | 150:2; 10-18 |
| | 151:2-25 |
| | 152:2-21 |
| | 153:3-21 |
| | 156:14-25 |
| | 157:2-9; 19-25 |
| | 158:2-6 |
| | 159:2-23 |
| | 160:15-25 |
| | 161:7-14 |
| | 162:10-14; 23-25 |
| | 164:2-25 |
| | 165:15-25; Exh 19 |
| | 166:2-25 |
| | 167:2-16 |
| | 168:17-25 |
| | 169:2-7; 20-25 |
| | 170:2-5; 15-23, Exh. 20 |
| | 171:12-25 |
| | 172: 2; 14-25 |
| | 173:2-25; Exh. 21 |
| | 174:2-6; 15-25 |

| | |
|---|---|
| | 175:2-21 |
| | 176:2-25 |
| | 177:2-7 |
| | 178:10-15 |
| | 181:4-24 |
| | 183:22-25 |
| | 184:2-8; 17-25; Exh 23 |
| | 185:2-18 |
| | 189:7-25 |
| | 190:2-20;23-25 |
| | 191:2-12 |
| | 193:10-25, Exh 22A; Exh 19 |
| | 194:2-5; 11-25 |
| | 195:2-25 |
| | 196:2-3; 9-17 |
| | 197:5-14 |
| | 198:3-12 |
| | 199:4-16; Exh 22 |
| | 200:3-9; Exh 24 |
| | 205:24-25 |
| | 206:2-24 |
| | 207:4-25 |
| | 208:2-24 |
| | 213:19-25; Exh. 19 |
| | 215:2-3;9-12; 24-25 |
| | 216:2-13 |
| | |
| **John Shields**<br>Surveyor | |
| | 37:6-10 |
| | 38:16-25 |
| | 39:6-16 |
| | 43:9-12 |
| | 44:23-25 |
| | 45:2-17 |
| | 48:10-22 |
| | 49:6-25 |
| | 50:2-25 |
| | 51:2-14 |
| | 54:8-10 |
| | 56:4-10 |
| | 57:12-25 |

| | |
|---|---|
| | 58:2-5 |
| | 59:2-25 |
| | 60:2-16 |
| | 62:9-25 |
| | 63:2-25 |
| | 64:2-25 |
| | 65:2-19 |
| | 66:3-25 |
| | 67:2-25 |
| | 68:2-25 |
| | 69:2-25 |
| | 70:2-4 |
| | 71:2-25 |
| | 72:2-25 |
| | 73:2-25 |
| | 74:2-7 |
| | 75:17-25 |
| | 76:2-13 |
| | 77:4-25 |
| | 78:2-12 |
| | 79:17-25 |
| | 80:2-8 |
| | 81:9-25 |
| | 82:2-25 |
| | 83:2-6; 16-25 |
| | 84:2-16 |
| | 85:18-25 |
| | 86:2-25 |
| | 87:2-23 |
| | 89:5-24 |
| | 90:21-25 |
| | 91:2-4; 16-25; Exh 95 |
| | 92:2-20 |
| | 93:23-25 |
| | 94:2-9 |
| | 96:6-16 |
| | 102:23-25 |
| | 103:2-11 |
| | 105:4-21 |
| | 106:2-13 |
| | 108:23-25 |
| | 109:2-8 |

| | |
|---|---|
| | 111:22-25 |
| | 112:2-25 |
| | 113:2-7 |
| | 114:2-4; 13-25 |
| | 115:2-15 |
| | 117:15-24 |
| | 118:23-25 |
| | 119:2-11; 23-25 |
| | 120:2-25 |
| | 121:2-19; 24-25 |
| | 122:2-13 |
| | 123:2-16 |
| | 130:24-25 |
| | 131:2-14 |
| | |
| **John Dott**<br>Surveyor | |
| | 4:8-17 |
| | 5:3-25 |
| | 6:2-25 |
| | 7:2-16; 21-25 |
| | 8:2-5; 17-22 |
| | 9:8-25 |
| | 10:2; 24-25 |
| | 11:2-25 |
| | 12:2-25 |
| | 13:2-3; 15-25 |
| | 14:2-25 |
| | 15:2-3 |
| | 16:7-25 |
| | 17:2-25 |
| | 18:2-25 |
| | 19:2-15; 23-25 |
| | 20:2-10; 16-17 |
| | 21:11-25 |
| | 22:2-4; 12-25 |
| | 23:2-6; 12-25 |
| | 24:2-17 |
| | 25:2-7; 16-22 |
| | 26:9-11 |
| | 27:5-8; 15-25 |
| | 32:24-25 |

| | |
|---|---|
| | 33:2-14 |
| | 34:18-25 |
| | 35:2-9 |
| | 38:9-25 |
| | 39:2-25 |
| | 40:2-25 |
| | 41:2-24 |
| | 42:11-25 |
| | 43:2-25 |
| | 44:2-3 |
| | 47:18-25 |
| | 48:2-3; 16-25 |
| | 49:2-25 |
| | 50:2-19 |
| | 51:7-25 |
| | 52:2-25 |
| | 53:2-9; 20-25 |
| | 54:2-13; 18-25 |
| | 55:2-25 |
| | 56:2-25 |
| | 57:2-25 |
| | 58:2 |
| | 60:2-25 |
| | 61:2-25 |
| | 62:2-25 |
| | 63:18-25 |
| | 64:14-25 |
| | 65:2-3 |
| | 69:22-25 |
| | 70:2-17 |
| | 71:19-25 |
| | 72:2-11 |
| | 75:15-25 |
| | 76:2-25 |
| | 77:2-25 |
| | 78:2-20 |
| | 79:8-25 |
| | 80:2-16 |
| | 81:9-22 |
| | 84:7-19 |
| | 90:19-25 |
| | 91:2-25 |

| | |
|---|---|
| | 94:13-25 |
| | 95:2-25 |
| | 96:2-16 |
| | 99:11-23 |
| | |
| **Tienco De Vries**<br>Superintendent | |
| | 6:23-25 |
| | 7:2-5; 13-25 |
| | 8:2-25 |
| | 9:2-25 |
| | 10:2-20 |
| | 11:17-25 |
| | 12:2-25 |
| | 13:2-19 |
| | 14:15-20 |
| | 15:15-25 |
| | 16:7-25 |
| | 17:2 |
| | 18:14-22 |
| | 19:9-25 |
| | 20:5-18; 25 |
| | 21:2-6<br>23:23-25 |
| | 24:2-10; 18-23<br>25:18-25<br>26:1-25<br>27:1-25<br>28:1-25 |
| | 30:14-25 |
| | 31:2-4 |
| | 32:4-21 |
| | 33:2-5; 11-25 |
| | 34:2-19 |
| | 35:5-25 |
| | 36:2-19 |
| | 39:4-25 |
| | 40:2-22 |
| | 42:10-22 |
| | 43:13-25 |
| | 44:2-17; 21-23 |
| | 45:10-25 |
| | 46:2-25 |

| | |
|---|---|
| | 47:2-6;25 |
| | 48:2-22 |
| | 50:2-25<br>51:2-25<br>52:2-15<br>53:13-25 |
| | 54:2-25 |
| | 55:2-16; 20-25 |
| | 56:2-5; 14-25 |
| | 57:2 |
| | 58:18-25 |
| | 59:2-10; 16-25 |
| | 60:2-20<br>61:15-25<br>62:2-25 |
| | 63:2-7; 16-25 |
| | 64:2-22 |
| | |
| **Dmitry Shishov**<br>Chief Engineer | |
| | 7:8; 19 |
| | 8:5-9; 20-22 |
| | 9:13-16;25 |
| | 10:2; 5-7 |
| | 11:5-7; 16-25 |
| | 12:2; 20-25 |
| | 13:2-7; 11-13; 17-24 |
| | 15:20-23 |
| | 16:4-6; 10-13; 18-25 |
| | 17:2-9 |
| | 29:4-17 |
| | 37:16-19 |
| | 38:2-9; 23-25 |
| | 39:2;8-25 |
| | 40:2-12 |
| | 41:10-20; Exh 158 |
| | 44:2-4; 20-25 |
| | 45:2-25 |
| | 46:2-3; 8-10; 14-25 |
| | 47:11-25 |
| | 48:2-23 |
| | 50:10-18; 21-25; Exh 25 |
| | 51:2;24-25 |

| | |
|---|---|
| | 52:2-6 |
| | 53:4-8; 14-25 |
| | 54:2-3; 20-25 |
| | 55:24-25 |
| | 56:7-19 |
| | 58:14-22 |
| | 59:7-10; 19-23 |
| | 65:16-19 |
| | 66:15-17 |
| | 67:3- 25 |
| | 68:21-25 |
| | 69:2-4; 12-15; 21-25 |
| | 70:2;21-25 |
| | 71:2; 21-25 |
| | 72:2-20; Exh 26 |
| | 73:2-12; 21-25; Exh 10 |
| | 74:3-7; 24-25 |
| | 75:2 |
| | 77:10-17 |
| | 79:12-25 |
| | 80:6-10; 13-25 |
| | 81:2-10; 14-25 |
| | 82:2-3 |
| | 83:3-25 |
| | 84:2-10 |
| | 86:3-20 |
| | 87:15-25 |
| | 88:2-14; 21-25 |
| | 89:2-15 |
| | 90:2-16 |
| | 91:5-17; 22-25; Exh 153; Exh 154 |
| | 92:2-12 |
| | 93:3-25 |
| | 95:5-19 |
| | 96:10-25; Exh 159 |
| | 97:2-25 |
| | 98:2-25 |
| | 99:2-13; 17-25 |
| | 100:2-22 |
| | 101:6-25 |
| | 102:2-25 |
| | 103:2-23 |

| | |
|---|---|
| | 105:5-11; 17-23 |
| | 106:6-15 |
| | 107:20-25 |
| | 110:2-25 |
| | 111:2-7 |
| | 112:12-21 |
| | 113:21-25 |
| | 114:2-9; 15-25 |
| | 115:2-11; 15-23 |
| | 116:2-25 |
| | 117:2-5 |
| | 118:15-25; Exh 151; Exh 160A-EE |
| | 119:2-7 |
| | 121:18-25 |
| | 122:2-14; 18-25 |
| | 123:7-25; Exh 160A |
| | 124:8-10 |
| | 125:22-25 |
| | 127:11-15 |
| | 129:22-25 |
| | 130:2-10; 17;24-25;Exh 161 |
| | 131:2-3; 25 |
| | 132:2-5; 8; 19-25 |
| | 133:2-11; 15-16; 22-25 |
| | 134:3-12;24 |
| | 135:2-3 |
| | 136:8-20 |
| | 137:8-12 |
| | 138:5-19;22-23; Exh 68 |
| | 139:5-11 |
| | 145:21-25 |
| | 146:2-10; 14-25 |
| | 147:2-5; 20-25 |
| | 148:2-18; Exh. 163; Exh 164; Exh 165 |
| | 149:10-15; 24-25 |
| | 150:2-9; 14-18; 21-25 |
| | 151:2-4 |
| | 152:16-25; Exh 159 |
| | 153:2 |
| | 154:12-19 |
| | 163:17-25 |
| | 164:2-25 |

| | |
|---|---|
| | 165:2-8; 18-25 |
| | 166:2-17; 24-25 |
| | 167:2-25 |
| | 168:2-25 |
| | 169:2-25 |
| | 170:2-21; 25 |
| | 171:2-24 |
| | 172:14-25 |
| | 173:2-25 |
| | 174:2-25 |
| | 175:8-14; 21-25; Exh 166 |
| | 177:2;11-15 |
| | 178:11-25 |
| | 179:2; Exh 167; Exh 168; Exh 169 |
| | 181:8-20; Exh 126B |
| | 182:2-25 |
| | 183:2-6; 16-21 |
| | 184:3-5; 22-24 |
| | 185:4-5; 11-17; 21-25; Exh 170 |
| | 186:5-25 |
| | 187:2-25 |
| | 188:11-23 |
| | 189:9-15; 22-25 |
| | 190:2-25 |
| | 191:5-22;24-25 |
| | 192:2-25 |
| | 193:2-25 |
| | 194:2-12 |
| | 199:12-25; Exh 173A |
| | 200:2-3;25 |
| | 201:2-6; 23-25; Exh 173C; Exh 173D; Exh 173E |
| | 202:2-25 |
| | 203:2-8; 12-22; Exh 173G |
| | 204:16-25; Exh 173F |
| | 205:2-16; 21-24; Exh 173H, Exh 173I |
| | 206:2-4; 14-25; Exh 173J |
| | 207:2-4;23-25; Exh 173K; 173L |
| | 208:6-8; 17-19; Exh 173M |
| | 209:19-21; 24-25 |
| | 210:2-5; 22-25 |
| | 211:2-6; 16-25; Exh 7 |
| | 212:2-25 |

| | |
|---|---|
| | 213:2-11 |
| | 214:17-19 |

| | |
|---|---|
| **Michel Visser**<br>Wilhelmsen Technical<br>Solutions | |
| | 4:2-25 |
| | 5:2-25 |
| | 6:2-25 |
| | 7:2-25 |
| | 8:2-25 |
| | 9: 2-25 |
| | 10:2-25 |
| | 11:2-25 |
| | 12:2-25 |
| | 13:2-25 |
| | 14: 2-25 |
| | 15:2-25 |
| | 16:2-25 |
| | 17:2-25 |
| | 18:2-25 |
| | 19:2-25 |
| | 20:2-25 |
| | 21:2-25 |
| | 22:2-25 |
| | 23:2-25 |
| | 24: 2-25 |
| | 25:2-25 |
| | 26:2-25 |
| | 27: 2-25 |
| | 28: 2-25 |
| | 29: 2-25 |
| | 30:2-25; Exhibit 200 |
| | 31:2-25; Exhibit 200 |
| | 32:2-25; Exhibit 201 |
| | 33:2-25 |
| | 34:2-25; Exhibits 202-205 |
| | 35:2-25; Exhibits 202-204, Exhibits 206-207 |
| | 36:2-25 |
| | 37:2-25 |
| | 38:2-25 |
| | 39:2-25 |
| | 40:2-25 |
| | 41:2-25 |

| | |
|---|---|
| | 42:2-25 |
| | 43:2-25; Exhibit 206 |
| | 44:2-25 |
| | 45:2-25 |
| | 46:2-25 |
| | 47:2-25; Exhibit 24 |
| | 48:2-25 |
| | 49:2-25 |
| | 50:2-25; Exhibit 206 |
| | 51:2-25 |
| | 52:2-25 |
| | 53:2-25 |
| | 54:2-25 |
| | 55:2-25 |
| | 56:2-25 |
| | 57:2-25; Exhibit 201 |
| | 58:2-25 |
| | 59:2-25; Exhibit 11, 207 |
| | 60:2-25 |
| | 61:2-25 |
| | 62:3-25 |
| | 63:2-25; Exhibit 209 |
| | 64:2-25 |
| | 65:2-25; Exhibit 208, 209 |
| | 66:2-25; Exhibit 208 |
| | 67:2-25 |
| | 68:2-25 |
| | 69: 2-25 |
| | 70: 2-25 |
| | 71: 2-25 |
| | 72:2-25 |
| | 73:2-25 |
| | 74:2-25 |
| | 75:2-25 |
| | 76:2-25 |
| | 77:2-25 |
| | 78:2-25 |
| | 79:2-25 |
| | 80:2-25 |
| | 81:2-25 |
| | 82: 2-25 |
| | 83:2-25 |
| | 84:2-25 |
| | 85:2-25 |
| | 86: 2-25 |

| | |
|---|---|
| | 87: 2-25 |
| | 88:2-25; Exhibit 201 |
| | 89: 2-25 |
| | 90: 2-25 |
| | 91: 2-25 |
| | 92:2-25 |
| | 93:2-25 |
| | 94: 2-25 |
| | 95:2-25 |
| | 96:2-25 |
| | 97: 2-25 |
| | 98: 2-25 |
| | 99: 2-25 |
| | 100:2-25 |
| | 101:2-25 |
| | 102:2-25 |
| | 103:2-25 |
| | 104:2-25 |
| | 105:2-25 |
| | 106:2-25 |
| | 107:2-25 |
| | 108:2-25 |
| | 109:2-25 |
| | 110:2-25 |
| | 111: 2-25 |
| | 112: 2-25 |
| | 113: 2-25 |
| | 114: 2-25 |
| | 115: 2-25 |
| | 116:2-25 |
| | 117:2-25 |
| | 118: 2-25 |
| | 119: 2-25 |
| | 120:2-25 |
| | 121:2-25; Exhibits 180, 181 |
| | 122:2-25 |
| | 123:2-25 |
| | 124:2-25 |
| | 125:2-25 |
| | 126:2-25 |
| | 127:2-25 |
| | 128:2-25 |
| | 129:2-25 |
| | 130:2-25 |
| | 131:2-25 |

|  | 132:2-25 |
|---|---|
|  | 133:2-25 |
|  | 134: 2-25 |
|  | 135: 2-25 |